UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| LARRY FORMAN, et al. | ) |
| | ) |
| PLAINTIFFS | ) **MEMORANDUM IN SUPPORT OF** |
| | ) **MOTION TO DISMISS AND** |
| v. | ) **TO COMPEL ARBITRATION** |
| | ) |
| TYLER HITCH & SAMINA HITCH, et al. | ) Case No. 3:25-cv-00213-CRS |
| | ) |
| DEFENDANTS | ) |

*******

Defendants Tyler Hitch ("Tyler"), Samina Hitch ("Samina"), (collectively, "the Hitches,") Hitch Attorneys, PLLC, and "Hitch Defense Attorneys," submit this Memorandum of Law in support of their Motion to Dismiss and Compel Arbitration.

## INTRODUCTION

Defendants did not take a single client, case, lead, or "trade secret" with them after *pro se* Plaintiff ("Larry,") fired them for asking for a raise. Larry is a social media influencer[1] who produces "clickbait,"[2] and highly-edited videos of his arguments with police.[3] According to the contract Larry drafted and had his former employees the Hitches sign, Larry cannot bring this action under his own arbitration clause.[4] Larry knew this and filed anyway; the Court should bind this matter to arbitration and dismiss this case.

Larry's first complaint in this matter based his claims under a non-compete clause that has been

---

1  The "intro" section of Larry's Facebook page describes him as a "YouTube Personality." Larry Forman (@duiguyky), Facebook, https://www.facebook.com/duiguyky, last accessed 4/22/25.
2  "Clickbait is a text or a thumbnail link that is designed to attract attention and to entice users to follow ("click") that link and view, read, stream or listen to the linked piece of online content, being typically deceptive, sensationalized, or otherwise misleading. . . often add[ing] an element of dishonesty . . . . Before the Internet, a marketing practice known as bait-and-switch used similar dishonest methods to hook customers." "Clickbait," *Wikipedia*, https://en.wikipedia.org/wiki/Clickbait, last accessed 4/22/25.
3  *E.g.*, "Watch a Disgraced Cop Lose Confidence as he Testifies Under Oath," The DUI Guy + Buckle Up, *YouTube*, https://www.youtube.com/watch?v=S43RP0YVk6A, last accessed 4/22/25.
4  Complaint, Ex. C, "Employment Agreement," Section 15, "Arbitration."

determined to be unethical,[5] and thus in relevant part unenforceable; Larry has since amended his Complaint to remove references to the clause,[6] but the contract at issue, which Larry attached to both Complaints, remains the same.

One of the law firms Larry names as a Defendant did not exist at the time Larry alleges it stole his clients.[7] The other is a mere d/b/a/ without legal personhood.[8] Should this case not be dismissed and sent to arbitration, Plaintiffs will file a motion to dismiss under 12(b)(6) on numerous grounds. Larry's conduct is sanctionable. Defendants move for dismissal, an Order binding this matter to arbitration, and for costs as sanction.

## BACKGROUND

It is well established in the Sixth Circuit that a party who agrees to arbitration has no choice but to honor that commitment absent extreme circumstances. *i.e., Parker v. Tenneco, Inc.*, 114 F.4th 786, 792 (6th Cir. 2024). Under 9 U.S.C. §2, such arbitration clauses, "**shall** be valid, irrevocable, and enforceable," (emphasis added), and under 9 U.S.C. §4, a court "**shall** make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." (Emphasis added). This Court should compel Plaintiffs to arbitrate their claims against the Hitches, and either stay the proceedings against the law firm defendants, or otherwise dismiss them as a matter of law for the reasons *infra*.

Specifically, this Court should grant this motion because: (1) there is a valid arbitration agreement between Larry and the Hitches, and (2) Plaintiffs' claims are subject to that arbitration agreement. Accordingly, this Court should either dismiss this action as against the Hitches or compel

---

5  *Id.*, at Section 11 ("Non-solicitation,"), Ky. Sup. Ct. R. 3.130-5.6 (banning such clauses), analyzed in *Greissman v. Rawlings & Assocs.*, PLLC, 571 S.W.3d 561 (Ky. 2019), and *Breeden v. Exel, Inc.*, Civil Action No. 3:21-CV-416-CHB, 2022 U.S. Dist. LEXIS 85749 (W.D. Ky. Apr. 12, 2022).
6  *Compare*, Complaint to First Amended Complaint. Defendants have not yet received a copy of this Amended Complaint and are relying on representations in the media.
7  Complaint, ¶38. Larry cites a link to a web archive showing the Hitches were engaged in the practice of law independently, as was contemplated and allowed under the contract Larry drafted, as well as his own intern's affidavit suggesting irregularities with case management software, to suggest the Hitches' founding of this firm after Larry fired the Hitches was part of a wide-reaching conspiracy to steal from him. *Id.*
8  According to the Kentucky Secretary of State business lookup function, there exists no entity in Kentucky called "Hitch Defense Attorneys."

arbitration and stay this action as against Defendants, pending arbitration.

This dispute arises out of Larry's firing of the Hitches due to Tyler asking for a raise. (Plaintiff's Complaint, Ex. A, hereinafter "Larry's letter.")[9] Larry's claims, however, relate to his assertion that the Hitches essentially stole clients and client data from him, (Complaint, ¶41-94), which hurt his feelings (*Id.*, at ¶95-100, making IIED and NIED claims). Larry's letter cites provisions of their contract that the Hitches allegedly infracted by engaging in the independent practice of law, but every mention in the employment contracts between the Hitches and Larry detailing a duty of the Hitches to refrain from the independent practice of law has been marked through and stricken. (Plaintiff's Complaint, Ex. C and D, hereinafter, "the Hitches' contract.") Larry's signature appears on both documents. While Larry apparently retains no signed document without these strikes, Larry's letter suggests this is part of a grand conspiracy against him, (Complaint, ¶25, Larry's letter, ¶2, ft. 5, alleging the Hitches unilaterally changed the terms of his contract) for which he seeks redress (Complaint, ¶63-66).

The arbitration agreement in the Hitches' contract covers this dispute. The provision applies to "any case [in which a] disagreement, difference, or controversy shall arise between" the Hitches and Larry. (The Hitches' contract, §15.) The matters covered by the arbitration clause pertain to "the respective rights and liabilities of the Firm [meaning all Plaintiffs, according to Larry, who filed this suit in his own name to pursue the rights of his co-Plaintiff law firm]." *(Id.)* Both in basic English and in broad legal terms (*See* U.S. Const., Art. III, §2, Cl. 1) the above-captioned lawsuit is a "controversy," is plainly a disagreement, and is thus covered under this arbitration clause. Moreover, the arbitration agreement covers this controversy because it relates to the "rights and liabilities of the Firm."

Based on the Plaintiffs' allegations, all of their claims against the Hitches plainly fit into the mold contemplated by Larry as he drafted the arbitration agreement he asked the Hitches to sign: these claims are a controversy and disagreement between the Hitches and Larry/his firm, and pertain to the

---

[9] Larry also suggests that Tyler wrongly yelled at him, failed to respect him, and "forgot[ his] role at the firm, as an employee." (Larry's letter).

rights and liabilities of Larry/his firm. The Hitches' contract is a written contract with a valid, irrevocable, and enforceable arbitration clause, and Larry has filed this suit in bald-faced violation of the agreement he drafted just three months ago. (The Hitches' Contract, ¶1, signifying that the agreement was entered into on January 30, 2025.) For these reasons, as well as the reasons outlined below, the Court should grant this Motion, compel arbitration, and dismiss or stay this action pending arbitration.

<b>FACTS</b>

### A. The Agreement to Arbitrate

Plaintiffs assert a grab bag of claims arising out of the "rights and liabilities" of Larry and his firm, all of which are subject to a conspicuous agreement to arbitrate found in the contract Larry wrote himself, presented to the Hitches, and signed along with them. (The Hitches' Contract). By signing that contract, Larry agreed to its terms, which Larry wrote himself. This includes the arbitration clause, which Larry wrote himself. The arbitration clause, which Larry wrote himself, reads in full:

> 15. Arbitration- In any case disagreement, difference, or controversy shall arise between the Attorney,[10] his or her heirs, executors, or administrators and the Firm[11] with respect to any matter in relation to or arising out of or under this Agreement. Whether as to the construction or operation thereof, or the respective rights and liabilities of the Firm or otherwise, and the parties to controversy cannot mutually agree as to the resolution thereof, then such disagreement, difference, or controversy shall be determined by arbitration under the commercial arbitration rules of the American Arbitration Association.
>
> 15.1 The power hereby given to the arbitrators shall not terminate or be recovered by the death of the Attorney, and the arbitrators shall proceed with the arbitration notwithstanding such death. Any award made by a majority shall be final, binding, and conclusive upon all parties and those claiming under them. The arbitrators shall have no power to make any award inconsistent with or

---

10  Meaning, the Hitches. The Hitches' Contract, ¶1.
11  Meaning Larry's firm and co-plaintiffs, *id.*

contrary to the terms and provisions of this Agreement. The cost and expenses of any arbitration shall be borne and paid as the arbitrators shall, by their award, direct.

15.2 The submission to arbitration in accordance with the requirements of this Section 15 of any and all agreements, differences, or controversies that may arise hereunder is made a condition precedent to the institution of any action at law or in equity with respect to the controversy involved, and no such action at law or in equity shall be instituted by anyone until after an award has been made by the arbitrators and shall be restricted solely to the subject matter of the challenge of such award on the grounds [sic] and only in the manner permitted by law. Such action at law shall not be a trial de novo as to the merits but shall be restricted to a challenge of the award on such grounds as are permitted by law.

Under the Federal Arbitration Act, this arbitration agreement is valid, irrevocable, and enforceable, 9 U.S.C. §2, and thus this court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement under 9 U.S.C. §4.

**B. Larry filed this suit rather than pursuing arbitration.**

Not even ninety days after drafting the Hitches' contract, Larry breached it and filed this lawsuit on April 14, 2025. Every single claim Larry makes falls under the arbitration clause and none of it can be litigated here. Accordingly, these claims must be dismissed and arbitrated.

## ARGUMENT

**A. The FAA applies to this Arbitration Agreement**

This arbitration agreement is governed by the Federal Arbitration Act ("FAA"). The FAA applies to any written arbitration agreement contained in a contract "evidencing a transaction involving commerce." 9 U.S.C. §2. The "overarching principle" of the FAA is that "arbitration is a matter of contract." *A. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). It "leaves no place for discretion by a district court." *Id.* at 218. Instead, courts must "rigorously enforce agreements to arbitrate." *Id* at 221. The Sixth Circuit and its federal district courts have frequently applied the FAA to

enforce arbitration provisions in various contexts. *See*, *e.g., Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) ("If parties contract to resolve their disputes in arbitration rather than in the courts, a party may not renege on that contract absent the most extreme circumstances.").

Here, Larry drafted an arbitration agreement, agreed to it, signed it, then broke it less than three months later. The FAA applies on its face, but moreover, by engaging with parties across state lines[12] Plaintiffs are engaging in interstate commerce. The arbitration clause itself refers to "commercial" arbitration with parties across state lines. Moreover, Plaintiffs engage in the practice of law across state lines. Even if the provision were not governed by the FAA, however, the claims would still be arbitrable for the same reasons under governing state law. KRS 417.060(1).

### B. Plaintiffs' claims are arbitrable

This Court should dismiss the Complaint and order Plaintiffs to pursue their claims, if at all, in arbitration. A party who agrees to arbitration has no choice but to honor that commitment. The FAA states that a court "***shall*** make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. §4 (emphasis added). As has been routinely stated,

> There is a strong presumption in favor of arbitration. Any doubts regarding arbitrability must be resolved in favor of arbitration. However, before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that **a valid agreement to arbitrate exists between the parties** and that **the specific dispute falls withing the substantive scope of that agreement.**

*Whaley v. T-Mobile, USA, Inc.,* 2013 WL 5155342 *1, *2 (E.D. Ky. Sept. 12, 2013) (citations omitted, emphasis added.)

Here, the analysis is quite easy: Larry's claims must be arbitrated because (1) an enforceable arbitration provision exists, and (2) Larry's claims fall within the scope of his agreement. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991).

---

12 According to the Hitches' contract, they are located in Indiana, while Plaintiffs are in Kentucky.

*i. Plaintiffs entered into a valid agreement to arbitrate*

Written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §42. The burden is on the party opposing arbitration to proffer evidence demonstrating that the agreement is invalid. *Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646, 659 (6th Cir. 2003).

Here, the arbitration agreement is valid under governing law, and no argument has yet been made otherwise. To the extent that saving doctrines might have applied, they are irrelevant here because Larry drafted the provision himself, and thus cannot claim duress, unconscionabilty, and the like. His signature appears on the Hitches' contract, and he himself proffered this contract to the Court. Larry is bound by this contract, and the arbitration clause therein.

*ii. All of Plaintiffs' claims against Defendants are covered by the arbitration agreement*

The scope of an arbitration provision is determined by general contract law principles of interpretation. *Volt Info. Scis., Inc. v. Bd. Of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989). Thus, "[i]n determining whether a claim falls within the scope of an arbitration clause, we look to the plain language of the agreement." *U.S. ex rel. Paige v. BAE Sys. Tech. Sols. & Servs., Inc.,* 566 F App'x 500, 503 (6th Cir. 2014) (citation omitted). However, to the extent there is an ambiguity or uncertainty about the scope of an arbitration clause, "the law requires us to resolve ambiguity . . . in favor of arbitration." *JPD, inc. v. Chronimed Holdings, Inc.,* 539 F.3d 388, 391 (6th Cir. 2008) (citation omitted). Further, where an arbitration clause is broadly written, "only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration will remove the dispute from consideration by the arbitrators." *Watson Wyatt & Co. v. SBC Holdings, Inc.,* 513 F.3d 646, 650 (6th Cir. 2008) (citation omitted).

The arbitration provision in this matter is crystal clear and extremely broad. It covers *all* disputes and controversies concerning *any* of the rights and liabilities of Larry's law firm. (the Hitches' contract, §15). The Court is compelled to resolve any ambiguities – if there are any – in favor of

arbitration. There is an utter lack of any evidence of a purpose to exclude any of Plaintiffs' claims from arbitration. Larry's claims are clearly arbitrable and cannot be brought before this or any court.

To the extent that any of Larry's claims are non-arbitrable, they should be stayed during arbitration of the other claims. 9 U.S.C. §3. Thus, not only should the court dismiss this matter and compel arbitration, but to the extent that this Court feels that any of Larry's claims are non-arbitrable, the proceedings on those claims should be stayed until the resolution of arbitration.

### C. Plaintiffs' arbitrable claims should be dismissed, and the non-arbitrable ones stayed

Because the Hitches' contract mandates arbitration of the claims asserted in the Complaint, the proper procedure under the FAA is for this Court to dismiss the Complaint ***with prejudice***. "The weight of authority ***clearly supports dismissal of the case*** when all of the issues . . . must be submitted to arbitration." *Green v. Ameritech Corp.,* 200 F.3d 967, 973 (6th Cir. 2000) (citations omitted, emphasis added). Thus, the Complaint should be dismissed ***with*** prejudice because all claims asserted by Plaintiffs are encompassed by the parties broad arbitration provision.

However, to the extent that the Court decides that some of Plaintiffs' claims may not be subject to arbitration, the FAA requires the Court to stay those claims, including discovery, pending the completion of arbitration. Indeed, under the FAA, a stay of any non-arbitrable claims is ***mandatory***. 9 U.S.C. §3, *Hensel v. Cargill,* No. 99-3199, 1999 WL 993775, at *4 (6th Cir., Oct. 19, 1999) ("Under §3 of the FAA, if any separate claim is referable to arbitration, then a stay of proceedings on the remaining claims is ***mandatory***.") (emphasis added).

### D. Larry is bound by the arbitration agreement

The Hitches' contract is technically between Larry's law firm and the Hitches, but Larry signed it, and is invoking his firm's contract rights as his own by filing this law suit. He has pierced his own corporate veil. Regardless, at bare minimum, Larry is a third-party beneficiary of the Hitches' contract, and the contract refers to Larry's rights and privileges under the contract therein multiple times. (The Hitches' contract, §§4.7.1, 4.9, 9.2.5, 16). Moreover, as sole-owner of Larry Forman Law, PLLC, Larry

is the only party to benefit from gains made by Larry's co-Plaintiffs, his law firms.

Whether to subject a third-party beneficiary to an arbitration clause depends on the language of the contract, or the circumstances under which it was executed. *Joint Admin. Comm. of the Plumbing & Pipefitting Indus. v. Wash. Grp. Int'l, Inc.*, 568 F.3d 626, 630 (6th Cir. 2009). Larry cannot avail himself of the benefits of his contract by asserting rights under it, and avoid its burdens or limitations. *Id.*, at 631. Furthermore, Larry is a "'direct' beneficiary of the contract, not just a recipient of an incidental benefit arising from the contract," and thus is considered a third-party beneficiary. *Bledsoe v. FCA US LLC*, 663 F. Supp. 3d 753, 793 (E.D. Mich. 2023). He is referred to directly, multiple times, in the contract he drafted and presented to the Hitches; this is factor weighing in favor of his classification as a third-party beneficiary. *Johnson v. Dodson Ins. Brokerage, LLC,* 793 F.3d 674, 679 (6th Cir. 2015).

Finally, in determining whether a third party is an intended beneficiary, courts look to the applicable state law. *i.e., Downriver Internists v. Harris Corp.*, 929 F.2d 1147, 1150 (6th Cir. 1991). In Kentucky, the required showing that a contract is intended to benefit a third-party "need not be expressed in the agreement itself; it may be evidenced by the terms of the agreement, the surrounding circumstances, or both." *Olshan Found. Repair and Waterproofing v. Otto,* 276 S.W.3d 827, 831 (Ky. App. 2009). The "dispositive question," however, is whether a party is "estopped from disavowing the arbitration language while simultaneously seeking enforcement of" other provisions of the underlying agreement. *Id.* Kentucky courts have answered this question in the affirmative. Generally, a party is estopped from both attempting to enforce a contract as a third-party beneficiary and simultaneously denying the validity of provisions in that contract requiring arbitration of their claims. *Id.* At 831-32, *Ping v. Beverly Enters., Inc.,* 376 S.W.3d 581, 599 (Ky. 2012).

Accordingly, Larry's claims must also be arbitrated and dismissed. At the very least, under the FAA, they must be stayed while the parties arbitrate the arbitrable claims. 9 U.S.C. §3. But Larry's claims are identical to his firm's; he has pierced his own corporate veil, and is at the very least a third-party beneficiary to the contract he drafted and should not be able to avail himself of its privileges

while denying its costs.

### E. Larry's conduct is sanctionable

Larry knows he is not allowed to file this case. He wrote the clause making it so. He wrote it himself less than three months before breaking it. He did this because he was emotionally hurt, (Complaint, ¶95-100), not because he believed he had a right to. Rather, Larry was emotionally hurt (*id.,*) because Tyler asked for a raise, and showed him less respect than he feels he is entitled to. (Larry's letter). Larry is a seasoned attorney, capable of drafting and, apparently, attempting to enforce contractual terms *pro se*. His misconduct is knowingly done and is outrageous. The Court should not abide it.

Further, not only does Larry rely on an unethical non-compete clause to make his case, but even worse, Larry outrageously alleges that the contract he proffered to the Court, (Complaint., Ex. C & D), for which he seeks redress for a breach (*id.,* ¶¶23, 58-62) was unilaterally altered by the Hitches, by striking out nearly every provision that would be beneficial to Larry's case prior to his filing of it. (*id.,* at ¶25). Larry signed this contract. He seeks to enforce it. He retained a copy of it, which he attached to this lawsuit. He does not have a copy without those markings and the signatures of the parties because none exists. Larry suggests that these markings, which he was well aware of since January 30, 2025, are a sign of "deceptive intent," (*id.*), and that as late as March 10, 2025, he was "unaware of Defendants' disloyalty." (*id.,* at 29).

But the strikes show a mutual intent to allow the Hitches to maintain a private practice while working for Larry, a fact Larry acknowledges. (*id.,* at ¶31). He now claims that he did not know the extent of their private practice, (*id.*) and that he did not agree to allow the Hitches to operate in certain fields of law. (*id.*) He does not allege that he communicated that to the Hitches, nor does his contract reflect that.

This mutual intent to allow the Hitches to maintain a private practice utterly demolishes Larry's case, hence why he fabricated an allegation that the strikes on his contracts were a sign of "deceptive

intent," and not terms dickered for by two employees against an employer with greater bargaining power. Larry thinks he made a bad deal and has buyer's remorse.

But buyer's remorse is not a cognizable cause of action.

In addition, Larry bases this case in part on a non-compete clause. These clauses are unethical. Ky. Sup. Ct. R. 3.130-5.6 (banning such clauses), analyzed in *Greissman v. Rawlings & Assocs., PLLC*, 571 S.W.3d 561 (Ky. 2019), and *Breeden v. Exel, Inc.*, Civil Action No. 3:21-CV-416-CHB, 2022 U.S. Dist. LEXIS 85749 (W.D. Ky. Apr. 12, 2022). Larry has since amended his complaint in an attempt to remove all references to this unethical provision. However, his first complaint is a matter of public record, as is, now, the contracts at issue in this case. Crucially, no defendant has yet received a copy of the Amended Complaint, and instead are relying on representations by the media.[13]

Under FRCP 11(b)(2) and (3), sanctions are warranted in this case. Rules 11(b)(2) and (3) state that "an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances the claims, defenses, and other legal contentions are warranted by existing law [and] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Moreover, Larry warranted this in his own name. (Complaint, pg 13).

But this is clearly not this case here. Larry broke the contract he drafted less than three months before filing, based his case in an unethical contractual clause, and misled the Court by making the outlandish claim that the strikes he witnessed the Hitches making to his contract were anything other than mutually agreed upon terms. Further, Larry's co-plaintiffs are also liable for his sanctionable behavior. FRCP 11(c)(1). Wherefore, Defendants respectfully move this Court to award costs to Defendants.

---

13 *Kentucky Trial Court Review, Facebook*, https://www.facebook.com/profile.php?id=61568361255957, post dated 4/21/25, last accessed 4/22/25.

**F. Conclusion**

For the above stated reasons, Defendants respectfully move this Court to dismiss this case, compel arbitration, and award costs to Defendants.

> Respectfully submitted,
>
> /s/ *Tyler Hitch*
> TYLER HITCH
>
> /s/ *Samina Hitch*
> SAMINA HITCH
>
> /s/ *Tyler Hitch*
> HITCH ATTORNEYS, PLLC
> D.B.A. HITCH DEFENSE ATTORNEYS
> Barristers Hall
> 1009 South 4th Street
> Louisville, KY 40203
> (502) 628-4270
> tyler@hitchdefense.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was provided via electronic filing and email to Larry Forman at larry@larryformanlaw.com on May 8, 2025.

> /s/ *Tyler Hitch*
> Tyler Hitch