IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| LARRY FORMAN<br>LARRY FORMAN LAW, PLLC<br>D/B/A FORMAN & ASSOCIATES<br><br>PLAINTIFFS<br>v.<br><br>TYLER HITCH<br>SAMINA HITCH<br>HITCH DEFENSE ATTORNEYS<br>HITCH ATTORNEYS PLLC<br><br>DEFENDANTS. | )<br>) PLAINTIFFS' REPLY IN<br>) SUPPORT OF MOTION TO<br>) ALTER OR AMEND<br>) JUDGMENT<br>)<br>) Case No. 3:25-cv-00213-CRS<br>)<br>)<br>)<br>)<br>)<br>) |

Come now the Plaintiffs, Larry Forman, et al., and respectfully submit this Reply in support of their Motion to Alter or Amend Judgment.

## I. INTRODUCTION

Defendants' Response overlooks two key legal points:

1) First, Defendants selectively omit the plain text of Federal Rule of Civil Procedure 4(l)(3) to manufacture a jurisdictional defect.

2) Second, Defendants mistakenly rely on a federal statute governing indigent prisoners to argue that controlling Sixth Circuit precedent has been superseded.

Because Defendants' opposition is legally baseless, Plaintiffs' Motion should be granted and the action reinstated.

## II. ARGUMENT

### A. FRCP 4(l)(3) Explicitly Refutes Defendants' Primary Argument Regarding Proof of Service

Defendants' central argument is that Plaintiffs "have no case" because Plaintiffs allegedly failed to strictly comply with Rule 4(l)(1) by not filing the proof of service prior to the Court's *sua sponte* dismissal. In making this argument, Defendants ignore the very rule they invoke.

Later on, Federal Rule of Civil Procedure 4(l)(3) explicitly states: "Failure to prove service does not affect the validity of service." FRCP 4(l)(3). It goes on to state that "The court may permit proof of service to be amended." *Id*. Which is exactly what Plaintiffs did here, and a provision entirely not addressed in Defendants' Response. The jurisdictional inquiry under Rule 4 is whether the Defendants were *actually* served and provided notice of the action, not the precise time the server's affidavit was placed on the docket.

As established by the executed summonses now on the record (DN 26, 27, 28, and 29), Defendants were properly served with the Original Complaint back on April 18, 2025. Pursuant to Rule 4(l)(3), the delayed filing of the proof of service does not invalidate that April 18th service. *Id*. Personal jurisdiction attached on that date, and the Court's subsequent dismissal for lack of service was therefore a clear error of law.

Respectfully, the dismissal appears to rest on a misunderstanding of Rule 4(l)(3) and the critical distinction between the jurisdictional act of perfecting service and the administrative act of filing the server's affidavit. Because actual service was executed on April 18, 2025, and the Defendants do not dispute this in their Response, the Court acquired full personal jurisdiction over the Defendants on that date.

Elevating a curable docketing delay over legally perfected service directly contravenes the plain text of Rule 4(l)(3) and constitutes a clear error of law. To correct this error and prevent manifest injustice, the January 20, 2026, Order must be vacated.

### B. 28 U.S.C. § 1915 Applies Exclusively to *In Forma Pauperis* Proceedings and Does Not Supersede *Tingler* for Fee-Paying Litigants

In an attempt to excuse the Court's *sua sponte* dismissal without notice or opportunity to cure, Defendants accuse Plaintiffs of "fabulism" and falsely claim that the Sixth Circuit's prohibition on ambush dismissals articulated in *Tingler v. Marshall*, 716 F.2d 1109 (6th Cir. 1983) was superseded by 28 U.S.C. § 1915(e)(2)(B). Defendants fundamentally misunderstand and intentionally misstate the United States Code.

Title 28 U.S.C. § 1915 strictly governs proceedings *In Forma Pauperis*. Section 1915(e)(2)(B) was enacted by Congress specifically to grant district courts the authority to *sua sponte* dismiss frivolous actions filed by indigent litigants and prisoners who bypass standard filing fees.

Plaintiffs are not indigent prisoners. Plaintiffs are a private law firm and an attorney who paid the requisite federal filing fee to initiate this civil action. Had Defendants performed even a cursory review of the jurisprudence they attempted to weaponize against Plaintiffs, they would have realized their error. The Sixth Circuit has unequivocally held that the *sua sponte* dismissal provisions of § 1915(e)(2) apply *exclusively* to indigent plaintiffs and do not strip fee-paying civil litigants of their procedural protections. *Benson v. O'Brian*, 179 F.3d 1014, 1016 (6th Cir. 1999) ("For the following reasons we hold that § 1915(e)(2) **applies only** to *in forma pauperis* proceedings. Most obviously, § 1915 is titled, 'Proceedings *in forma pauperis*.' To our knowledge

**no other part of § 1915 has been applied to actions not pursued *in forma pauperis*.") (emphasis added).

The Court in *Benson* even went so far as to restate the rule originally outlined in *Tingler* thus showing that *Tingler* is still good case law. Notably the court said that "a plaintiff generally should be given notice and an opportunity to respond prior to the district court's *sua sponte* dismissal of the complaint." *Id*. at 1017 (citing *Tingler*, 716 F.2d at 1112). The court concluded that "28 U.S.C. § 1915(e)(2) is inapplicable to actions that are not pursued *in forma pauperis*." *Id*.

The Defendants *themselves* agree that 28 U.S.C. § 1915(e)(2) overruled the decision in *Tingler* and **only applies** in *in forma pauperis* suits, as they cite the exact same language in their Response. DN 31 at Page ID# 300.

Because Plaintiffs paid the requisite filing fee, the *Tingler* protocol—which mandates notice and an opportunity to respond before a *sua sponte* dismissal—remains binding and highly relevant Sixth Circuit precedent for this action. Defendants' confident reliance on an *In Forma Pauperis* statute to accuse Plaintiffs of fabricating law is not a legal argument; it is a glaring admission that they failed to read the actual holding of the cases they cite.

Because this is not an *in forma pauperis* case, § 1915 does not control. Accordingly, the general principle that a plaintiff should receive notice and an opportunity to respond prior to a *sua sponte* dismissal remains applicable. Even so, the central issue here is not notice, but Rule 4(l)(3)'s clear statement that failure to prove service does not affect the validity of service.

### C. Defendants Concede Their Request for Affirmative Relief

Defendants fail to rebut the fact that they waived any perceived service defects by actively participating in the litigation and seeking affirmative relief. Defendants admit in their Response

4

that they moved for sanctions and attorneys' fees. DN 31 at Page ID# 296 and 300. A party cannot simultaneously assert that a court lacks personal jurisdiction over them while affirmatively petitioning that same court to utilize its power to award them monetary fees, as previously argued by Plaintiffs. DN 30 PageID# 288 to 290. By seeking such relief, Defendants submitted to the Court's jurisdiction. Regardless, Defendants' request for affirmative relief has no bearing on whether service was valid under Rule 4(l)(3).

### D. Defendants Failed to Establish *Legal* Prejudice

In their Response, Defendants claim they will be prejudiced by a reinstatement of this action because they "work well over 40 hours a week while raising three children" and find the litigation consumes their "time, energy, and psychological well-being." These assertions, while perhaps personally inconvenient for the Defendants, do not constitute cognizable legal prejudice under the Federal Rules of Civil Procedure. In the context of service of process, prejudice requires a tangible impairment of a party's ability to defend the lawsuit on the merits. Defendants identify no litigation prejudice, no missed deadlines, no evidentiary harm, and no procedural disadvantage resulting from the delayed filing of the proof of service.

Because Defendants were properly served with the Original Complaint on April 18, 2025, they had *actual notice* of the action and actively participated in the litigation by filing numerous substantive motions. The administrative delay in placing the server's affidavit on the docket did not deprive them of any substantive rights or hinder their defense. The general stress and time commitment inherent in being a party to a federal lawsuit is a universal reality of the adversarial system, not a specific legal prejudice warranting a dispositive dismissal. Notwithstanding, the lack or presence of prejudice has no bearing on whether service was valid under Rule 4(l)(3).

### E. Defendants' Attempt to Revive Their Sanctions Motions Relies on a Fabricated "Admission"

Defendants request a hearing on their previously mooted Motions for Sanctions (DN 15 and 18), alleging the Court must opine on a "written admission" by Plaintiffs that this case "has no merit." DN 31 at Page ID# 300. This claim is a blatant misrepresentation of the judicial record. To support this alleged "admission," Defendants cite exclusively to Docket Number 18—which is Defendants' *own* Second Motion for Sanctions. DN 18.

Defendants cannot legally launder their own self-serving allegations through their own pleadings and present them to this Court as an 'admission' by the opposing party. Furthermore, the underlying communication Defendants reference in DN 18—a disputed, pre-litigation exchange regarding the retention of specific client data—does not, under any reading of the law, constitute a blanket legal admission that Plaintiffs' federal complaint lacks merit. If the action is reinstated, any sanctions motions can be addressed in the ordinary course. The existence of a disputed characterization in a prior filing does not bear on whether service was valid under Rule 4(l)(3).

### F. Defendants' First Motion for Sanctions (DN 15) is Fatally Defective Under FRCP 11(c)(2) and Constitutes Sanctionable Conduct by this Court

Defendants casually threaten the revival of their first Motion for Sanctions (DN 15). DN 31. However, Defendants failed to serve this motion on Plaintiffs prior to filing it with the Court, in direct violation of the mandatory 21-day "safe harbor" provision of Federal Rule of Civil Procedure 11(c)(2). FRCP 11(c)(2).

The Sixth Circuit strictly enforces this safe harbor requirement. A motion for sanctions under Rule 11 must be served under Rule 5, but it must not be filed or presented to the court unless

the challenged paper is not withdrawn or corrected within 21 days after service. *See Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 767 (6th Cir. 2014) (holding that failure to comply with the safe harbor provision precludes an award of sanctions). Defendants completely ignored this mandatory procedural safeguard.

By weaponizing Rule 11 and clogging the Court's docket with a procedurally barred motion, Defendants have engaged in the exact type of frivolous, abusive litigation tactics that Rule 11 was designed to punish. Should this matter proceed, Plaintiffs reserve the right to address any procedural issues concerning Rule 11 compliance at the appropriate time. The present motion, however, concerns only the validity of service and the applicability of Rule 4(l)(3).

### III. CONCLUSION

Defendants' Response is devoid of applicable legal authority. The unassailable facts remain:

1) Defendants were served on April 18, 2025;
2) Delayed proof of service does not invalidate that service under FRCP 4(l)(3);
3) Defendants waived any defects by seeking affirmative relief; and
4) The Court's *sua sponte* dismissal lacked the notice required for fee-paying litigants.

**WHEREFORE**, Plaintiffs respectfully request that the Court grant their Motion to Alter or Amend Judgment pursuant to Rule 59(e), vacate the January 20, 2026, dismissal, and reinstate this action to the active docket.

Respectfully submitted this 4th day of March 2026.

By: */s/ Larry Forman*
LARRY FORMAN
KBA No. 95548
FORMAN & ASSOCIATES
The Forman Building
1139 South 4th Street
Louisville, Kentucky 40203
Work: (502) 931-6788
Fax: (419) 574-7156
Larry@LarryFormanLaw.com
*Attorney for Plaintiffs and*
*Attorney Pro Se*